IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| WINDY CITY INNOVATIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 15-cv-102 |
| | § | |
| FACEBOOK, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Windy City Innovations, LLC ("Windy City") files this Original Complaint against Defendant Facebook, Inc. ("Facebook") for patent infringement under 35 U.S.C. § 271 and alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

**THE PARTIES**

1. Plaintiff Windy City is a limited liability company organized and existing under the laws of the State of Delaware, and maintains its principal place of business at 195 North Harbor Drive, Suite 5403, Chicago, Illinois 60601.

2. Defendant Facebook, Inc. is a Delaware corporation with its headquarters at 1601 Willow Road, Menlo Park, California 94025. Facebook is registered to conduct business in the State of North Carolina. Facebook has designated Corporation Service Company, 327 Hillsborough St., Raleigh, North Carolina 27603 as its agent for service of process.

1

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Facebook because, among other things, Facebook has committed acts of patent infringement and/or has induced and contributed to acts of patent infringement by others in North Carolina, including in this district, and has engaged in continuous and systematic activities in North Carolina, including the operation of its 160-acre data center in Rutherford County located at 284 Social Circle, Forest City, North Carolina 28043.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Facebook is subject to personal jurisdiction in this district, Facebook has regularly conducted business in this judicial district, Facebook has a regularly established place of business in this judicial district in Rutherford County at 284 Social Circle, Forest City, North Carolina 28043, and certain of the acts complained of herein occurred in this judicial district.

## PATENTS-IN-SUIT

6. On March 26, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,407,356 (the "'356 patent") entitled "Real Time Communications System." A true and correct copy of the '356 patent is attached hereto as Exhibit A.

7. On June 4, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,458,245 (the "'245 patent") entitled "Real Time

2

## JURISDICTION AND VENUE

3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Facebook because, among other things, Facebook has committed acts of patent infringement and/or has induced and contributed to acts of patent infringement by others in North Carolina, including in this district, and has engaged in continuous and systematic activities in North Carolina, including the operation of its 160-acre data center in Rutherford County located at 284 Social Circle, Forest City, North Carolina 28043.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, Facebook is subject to personal jurisdiction in this district, Facebook has regularly conducted business in this judicial district, Facebook has a regularly established place of business in this judicial district in Rutherford County at 284 Social Circle, Forest City, North Carolina 28043, and certain of the acts complained of herein occurred in this judicial district.

## PATENTS-IN-SUIT

6. On March 26, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,407,356 (the "'356 patent") entitled "Real Time Communications System." A true and correct copy of the '356 patent is attached hereto as Exhibit A.

7. On June 4, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,458,245 (the "'245 patent") entitled "Real Time

Communications System." A true and correct copy of the '245 patent is attached hereto as Exhibit B.

8. On June 25, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,473,552 (the "'552 patent") entitled "Communications System." A true and correct copy of the '552 patent is attached hereto as Exhibit C.

9. On April 8, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,694,657 (the "'657 patent") entitled "Real Time Communications System." A true and correct copy of the '657 patent is attached hereto as Exhibit D.

10. By assignment, Windy City owns all rights, title, and interest in the '356, '245, '552, and '657 patents (the "patents-in-suit") and possesses all rights of recovery.

## FACTUAL ALLEGATIONS

11. The patents-in-suit generally cover a real time communications system for managing and facilitating communication of digital data, including different media types across networks. The patents-in-suit also generally cover a computer network (i.e., a server network) that arbitrates permissions and distribution of multimedia information messages utilizing, for example, an application program interface ("API").

12. In or around the year 1996, Daniel Marks, the inventor of the patents-in-suit, was hired by executives at American Information Systems and asked to develop a communications system for employees at American Information Systems to more easily communicate and share various types of information over the Internet.

13. Daniel Marks thereafter designed and developed a computerized communications system with software that, *inter alia,* creates a virtual connection among

3

individual computers via the Internet, permits access to the connection in accordance with predefined rules (e.g., user identity), arbitrates communications in accordance with predefined rules, and provides an application programming interface multiplexing and demultiplexing communications by message type.

14. Daniel Marks is the named inventor on six issued patents claiming various aspects of his inventions. For example, some embodiments feature a controller computer that arbitrates communications between participator computers, using predefined rules and parameter, such as user identities and censorship settings. As another example, some embodiments feature a controller computer with an application programming interface that multiplexes and demultiplexes messages and creates a virtual connection between, for example, channels, private messages, and multimedia objects between the controller computer and participator computers. As yet another example, some embodiments feature a controller computer that facilitates communication of digital data between participator computers by using, for example, authenticated user identities and pointer-triggered messages to fetch digital communication data.

15. In addition to his involvement with Windy City, Daniel Marks currently serves as an Associate Research Professor in the Department of Electrical Engineering and Computer Engineering at Duke University in Durham, North Carolina.

16. Facebook owns and operates the widely used website located on the World Wide Web at http://www.facebook.com ("Facebook.com"). Facebook.com offers functionality that enables Facebook users to create and virtually connect to a network of contacts, share multimedia files with all or some of those contacts, establish private groups, customize privacy settings, and communicate in real time via Facebook's chat and messages

4

functionalities. Facebook.com's private group, chat, and messages features are real time communications systems for communicating different media types over the Internet, and also arbitrate permissions and distribution of multimedia information messages utilizing, for example, an application program interface (e.g., Facebook's internal APIs, Facebook's APIs for developers). "Facebook.com" refers to the Facebook.com website, client software (including, e.g., plug-ins, third-party applications, or helper applications), Facebook's internal and developer APIs, servers and computers that are used to support the described functionalities, including facilitating communications and virtual connections between users of Facebook.com, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial.

17. Facebook uses its website to obtain advertising revenue by placing advertisements on its web pages.

18. Facebook offers mobile apps, including the Facebook app and the Facebook Messenger app ("Facebook apps"). Facebook apps offer functionality that enables Facebook users to create and virtually connect to a network of contacts, share multimedia files with all or some of those contacts, establish private chats, customize privacy settings, and communicate in real time. The Facebook apps offer the functionality to communicate different media types over the Internet, and also arbitrate permissions and distribution of multimedia information messages utilizing, for example, an application program interface (e.g., Facebook's internal APIs, Facebook's APIs for developers). "Facebook apps" refers to the Facebook app, the Facebook Messenger app, client software (including, e.g., plug-ins, third-party applications, or helper applications), Facebook's internal and developer APIs, servers and computers that are used to support the described functionalities, including

facilitating communications and virtual connections between users of the Facebook apps, and includes any improvements, modifications, enhancements, fixes, updates, upgrades and future versions through trial.

19. Facebook offers these apps for download on mobile devices, including for example, iOS devices through Apple's App Store, Windows Phones and Microsoft Surface tablets through the Windows Store, Android devices through Google's Play Store, and Amazon devices through Amazon's Appstore.

20. Facebook.com and the Facebook apps are collectively referred to as "Facebook's Accused Instrumentalities."

## COUNT ONE: PATENT INFRINGEMENT BY FACEBOOK

21. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

22. As described below, Facebook has infringed and continues to infringe the patents-in-suit.

23. Facebook's Accused Instrumentalities meet claims of the patents-in-suit. For example, Facebook includes or operates a controller computer that arbitrates communications between participator computers of end users, using predefined rules and parameters, such as user identities (e.g., Facebook accounts or account identifiers, etc.) and censorship settings (e.g., blocked users, private chat settings, private groups, privacy settings, muted conversations, device capability restrictions, etc.). As another example, Facebook includes or operates a controller computer with an application programming interface (e.g., Facebook's internal APIs, Facebook's APIs for developers, etc.) that multiplexes and demultiplexes messages and creates a virtual connection between, for example, channels, private messages,

6

and multimedia objects (e.g., private groups, private chats, group chats, video chats, messages with text, hyperlinks, video, audio, or graphics, etc.) between the controller computer and participator computers of end users. As yet another example, Facebook includes or operates a controller computer that facilitates communication of digital data (e.g., text, hyperlinks, video, audio, or graphics, etc.) between participator computers of end users by using, for example, authenticated user identities (e.g., Facebook accounts or identifiers, etc.) and pointer-triggered messages (e.g., messages, including notifications, with URLs, IP addresses, or other location/address identifiers, etc.) to fetch digital communication data.

24. Facebook makes, uses, provides, sells and/or imports Facebook's Accused Instrumentalities within the United States or into the United States without authority from Windy City.

25. Facebook therefore infringes the patents-in-suit under 35 U.S.C. § 271(a) with Facebook's Accused Instrumentalities.

26. Facebook has actual knowledge of all patents-in-suit at least as of the filing of this Complaint for Patent Infringement.

27. Facebook indirectly infringes the patents-in-suit by inducing infringement by others, such as end-users and application developers, because Facebook, for example, instructs and/or requires these third parties to make, use, sell, offer to sell or import Facebook's Accused Instrumentalities in or into the United States. Facebook additionally indirectly infringes the patents-in-suit by encouraging, facilitating and instructing its users to use the inventions while they use Facebook's Accused Instrumentalities. Facebook does this by, without limitation, modifying, in response to user actions, the configuration of user computers and devices and by encouraging users to use their computers and devices, so

modified, to interact with Facebook's Accused Instrumentalities, thereby inducing use of the claimed inventions. Facebook also provides APIs for use by application developers.

28. Facebook takes the above actions intending to cause infringing acts by others.

29. Facebook is aware of the patents-in-suit and knows that others' actions, if taken, would constitute infringement of those patents. Alternatively, Facebook believes there is a high probability that others would infringe the patents-in-suit but remains willfully blind to the infringing nature of others' actions. Facebook therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

30. Facebook indirectly infringes the patents-in-suit by contributing to infringement by others, such as end-users and application developers, by providing within the United States software components for operating Facebook's Accused Instrumentalities and interacting with end user client software and platforms. These software components are known by Facebook to be especially made or adapted for use in Facebook's Accused Instrumentalities. These software components constitute a material part of the inventions claimed in the patents-in-suit, and are used to practice one or more processes/methods covered by the claims of the patents-in-suit. Such Facebook-related components are, for example, the software components that perform the authentication functionality claimed in the patents-in-suit, the software components that query Facebook servers to perform arbitration of computer connections, the software components comprising Facebook's internal APIs and APIs for application developers, the software components that perform the multiplexing and demultiplexing of messages, and the software components that install Facebook's Accused Instrumentalities on a computer or server.

31. Facebook knows these Facebook-related components to be especially made or

especially adapted for use in an infringement of the patents-in-suit and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Facebook believes there is a high probability that others would infringe the patents-in-suit but remains willfully blind to the infringing nature of others' actions. Facebook therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

32. Facebook's acts of infringement have caused damage to Windy City. Windy City is entitled to recover from Facebook the damages sustained by Windy City as a result of Facebook's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Facebook have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Windy City for which there is no adequate remedy at law, and for which Windy City is entitled to injunctive relief under 35 U.S.C. § 283.

33. To the extent that Facebook releases any new version of Facebook's Accused Instrumentalities, such instrumentalities meet the claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Facebook's current infringement described above.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

1. A judgment that Facebook has directly infringed the patents-in-suit, contributorily infringed the patents-in-suit, and/or induced the infringement of the patents-in-suit;

2. A preliminary and permanent injunction preventing Facebook and its officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in

active concert or participation with it, from directly infringing, contributorily infringing, and/or inducing the infringement of the patents-in-suit;

3. A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Plaintiff its attorneys' fees incurred in prosecuting this action;

4. A judgment and order requiring Facebook to pay Plaintiff damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of final judgment, with an accounting, as needed;

5. A judgment and order requiring Facebook to pay Plaintiff the costs of this action (including all disbursements);

6. A judgment and order requiring Facebook to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

7. A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Plaintiff be awarded a compulsory ongoing licensing fee; and

8. Such other and further relief as the Court may deem just and proper.

Dated: June 2, 2015

Respectfully submitted,

s/Philip S. Anderson
N.C. Bar Nº 21323
s/Robert B. Long, Jr.
N.C. Bar Nº 2787
Long, Parker, Warren, Anderson & Payne, P.A.
14 South Pack Square, Suite 600
Asheville, North Carolina 28801
Telephone: 828/258-2296
Fax: 828/253-1073
email: philip@longparker.com
email: fran@longparker.com

**CALDWELL CASSADY & CURRY**

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
*(Pro Hac Vice Motion to be filed)*
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
*(Pro Hac Vice Motion to be filed)*
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
*(Pro Hac Vice Motion to be filed)*
Email: acurry@caldwellcc.com
Warren J. McCarty
Illinois State Bar No. 6313452
Email: wmccarty@caldwellcc.com
*(Pro Hac Vice Motion to be filed)*
**CALDWELL CASSADY & CURRY**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
WINDY CITY INNOVATIONS, LLC**